**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Triston D. Fowler,** | ) | **Civil Action No.:_____** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Experian Information Solutions, Inc.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1.      This is an action brought by Plaintiff, Triston D. Fowler, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County, and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Triston D. Fowler, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Experian Information Solutions, Inc., ("Experian") is an Ohio company

2

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.    Defendant Experian is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.    Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13.    Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14.    The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's Experian credit file, and failed to reinvestigate Plaintiff's disputes.  Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

**FACTUAL ALLEGATIONS**

15.    In September 2024, Plaintiff first became aware that he was the victim of identity theft when Bank of America alerted him that his social security number was being used to enroll in a military benefits program.

16.    Upon reviewing his credit reports, Plaintiff discovered that someone in Rancho Cucamonga, California had been using his social security number since 2019 to obtain credit and purchase vehicles.

17.    On September 17, 2024, Plaintiff obtained a copy of his Experian credit report and also added a credit freeze to his Experian credit report.  At that time, Plaintiff's Experian credit score was 687 due to all of the inaccurate credit accounts being included on his report.

18.    On September 18, 2024, Plaintiff did online disputes with Defendant of eight accounts being reported by Navy Federal Credit Union (hereinafter "NFCU") and one collection account being reported by Credit Collection Services, as the accounts did not belong to him.

19.    On September 19, 2024, Plaintiff filed a police report with the Spartanburg Police Department.  That same day, Plaintiff also filed an identity theft report with the Federal Trade Commission.

20.    On October 9, 2024, Defendant provided Plaintiff with its Dispute Results showing that each and every NFCU account was verified as accurate and updated.  Accordingly, Defendant continued reporting all eight of the fraudulent accounts as belonging to Plaintiff. The Dispute Results also showed that the collection account with Credit Collection Services was deleted.

4

21.     On October 20, 2024, Plaintiff obtained a new copy of his Experian credit report which continued to report inaccurate information concerning the Plaintiff, including the eight fraudulent NFCU accounts.

22.     On October 28, 2024, Plaintiff received an alert from Defendant stating his credit score had increased by 42 points and that his credit score was now very good.

23.     On November 29, 2024, Defendant allowed Plaintiff's credit freeze to be removed without his permission.  Plaintiff did not authorize or request the credit freeze to be removed from his credit report.

24.     On that same day, American Honda Finance obtained a copy of the Plaintiff's Experian credit report without his permission or authorization.

25.     On December 20, 2024, Plaintiff's Experian credit score dropped 40 points.

26.     On December 21, 2024, American Honda Finance began reporting a new fraudulent account on Plaintiff's Experian credit report.

27.     On January 15, 2025, Plaintiff again disputed inaccurate information appearing on his credit report.  Specifically, Plaintiff disputed employment information that was not his, a telephone number that was not his, two fraudulent NFCU accounts that were not his, and the new fraudulent American Honda Finance account that was not his.

28.     On February 5, 2025, Defendant forwarded Plaintiff its Dispute Results wherein Defendant notified Plaintiff that the disputed employment and telephone number were deleted.  However, all three of the disputed, fraudulent accounts remained.

29.     On or about February 7, 2025, NFCU reported one of the accounts as over credit limit.

30.    On February 12, 2025, Plaintiff called Defendant to again dispute all of the inaccurate information appearing on his Experian credit report.  Plaintiff's first call only lasted three minutes before it was disconnected by Defendant.  Thereafter, Plaintiff immediately called Defendant a second time.  During this second call with Defendant, Plaintiff was on the phone with Defendant for 57 minutes trying to get his credit report corrected and the inaccurate information removed.

31.    On or about February 16, 2025, American Honda Finance reported the fraudulent account as 30 days past due.  On that same day, Plaintiff's Experian credit score dropped by 89 points.

32.    On February 25, 2025, Plaintiff again called Defendant to dispute the fraudulent information appearing on his Experian credit report.

33.    On February 28, 2025, Plaintiff obtained a new copy of his Experian credit report which continued to include two fraudulent addresses that did not belong to Plaintiff. Additionally, Plaintiff's credit report continued to include the fraudulent American Honda Finance account and two fraudulent open NFCU accounts.  There were also six closed fraudulent NFCU accounts reporting as belonging to Plaintiff.  Plaintiff has never had a NFCU account.  None of these accounts belong to Plaintiff.  Finally, there were two inquiries reporting that did not belong to Plaintiff and were not authorized by Plaintiff.

34.    On March 27, 2025, Plaintiff obtained a new copy of his Experian credit report which continued to include two previously disputed fraudulent addresses, eight fraudulent NFCU accounts, and two fraudulent inquiries which were not authorized by Plaintiff.  The fraudulent American Honda Finance account was no longer reporting on Plaintiff's

Experian credit report, but the unauthorized inquiry remained.

35.    On May 5, 2025, Defendant allowed the credit freeze on Plaintiff's Experian credit file credit file to be lifted by an unauthorized third party.  Plaintiff did not lift the freeze on his credit file nor did he authorize a third party to lift the freeze on his behalf.

36.    That same day, JPMCB Card Services obtained a copy of Plaintiff's Experian credit file.  Plaintiff did not apply for credit with JPMCB, nor did he authorize JPMCB to access or review his credit report.

37.    On May 26, 2025, Plaintiff obtained a copy of his Experian credit report and not only did it continue to report the two fraudulent addresses, eight fraudulent NFCU accounts, and the fraudulent American Honda Finance inquiry, it was now reporting an unauthorized fraudulent hard inquiry by JPMCB.

38.    On June 30, 2025, Plaintiff obtained a copy of his Experian credit report.  This report showed Defendant continued to report the two fraudulent addresses, eight fraudulent NFCU accounts, and the fraudulent American Honda Finance inquiry.  Additionally, Plaintiff's credit report now showed that Defendant was reporting two hard inquiries by JPMCB, both of which were unauthorized and fraudulent.

39.    On August 25, 2025, Plaintiff's Experian credit score dropped by 71 points.

40.    On September 12, 2025, Defendant added a new fraudulent address to Plaintiff's credit file.

41.    On October 24, 2025, NFCU reported one of the fraudulent accounts as being over the credit limit.  That same day, NFCU reported the account as 30 past due.  As a result, on October 27, 2025, Plaintiff's Experian credit score dropped by 97 points to 599.

7

42.     On February 12, 2026, Plaintiff called Defendant to again dispute multiple inaccurate items appearing on his Experian credit file.  Specifically, Plaintiff disputed multiple inquiries which he did not authorize.  Plaintiff also disputed the two open fraudulent NFCU accounts, multiple fraudulent addresses, and a name and SSN appearing on his credit report.

43.     On February 19, 2026, Plaintiff again disputed an address, name, and SSN appearing on his credit report.

44.     On February 20, 2026, Defendant forward Plaintiff multiple dispute results.  The first dispute results informed Plaintiff that Defendant had removed the addresses disputed as fraudulent.  These results also informed Plaintiff that two American Honda Finance inquiries had been removed, that his name had been updated, and that one of the addresses in California had been deleted before his dispute.  The first dispute results informed Plaintiff that the two disputed NFCU accounts were still under investigation and should be completed by March 12, 2026.  The second dispute results informed Plaintiff that the disputed phone number(s) were not currently displaying on Plaintiff's credit report.  These results again informed Plaintiff that the investigation into the two disputed NFCU accounts was still pending and projected to be completed by March 12, 2026.  Finally, the second dispute results indicated that the investigation into two American Honda Finance items was also still pending and was projected to be completed by March 13, 2026.  With the second dispute results, Defendant also provided an updated copy of Plaintiff's Experian credit report which showed that the two disputed, fraudulent NFCU accounts were still reporting, as were multiple fraudulent inquiries, and three addresses the did not belong to Plaintiff.

8

45.    On February 20, 2026, Defendant also forwarded Plaintiff a letter regarding "Remedying the Effects of Identity Theft."

46.    On March 10, 2026, Defendant sent Plaintiff it's dispute results.  These dispute results indicated that one of the disputed NFCU accounts had been verified as accurate. Accordingly, the derogatory, fraudulent account remained on Plaintiff's Experian credit report.  These results also showed that five disputed inquiries and five disputed addresses had finally all been deleted, and Plaintiff's name had finally been corrected.

47.    Although one of the fraudulent NFCU accounts continued to be reported on Plaintiff's Experian credit report, on March 20, 2026, Plaintiff was finally able to apply for a mortgage so he could begin looking for a new home to purchase.

48.    On June 11, 2026, Plaintiff sent a dispute letter to Defendant wherein he specifically informed Defendant that another individual by the name of Triston D. Fowler had been wrongfully using Plaintiff's social security number since 2019.  Plaintiff informed Defendant that he did not live at the military address on his credit report and that he had never been in the military.  Accordingly, Plaintiff requested that address be deleted. Plaintiff also disputed all eight NFCU accounts as not his.  Plaintiff specifically informed Defendant that he had never borrowed money from NFCU and that the accounts were not his accounts.  Finally, Plaintiff disputed dozens of soft inquiries as they were done by entities with whom he had never done business.  With his dispute letter, Plaintiff included a copy of his police report, FTC Affidavit, and a letter from Social Security confirming that it had mistakenly given Plaintiff's social security number to a third party.

49.    Defendant received Plaintiff's written dispute on July 15, 2026.

50. On or about June 24, 2026, Defendant forwarded Plaintiff two separate dispute results. In the first set of results, Defendant informed Plaintiff that all of the NFCU inquiries had been deleted from his credit report. The dispute results also indicated that the disputed address of Unit 8400 Box 56 DPO AE 94980056 had also been deleted. Upon review of his credit report attached to the first dispute results, Plaintiff discovered that all of the NFCU accounts had finally been deleted. Unfortunately, almost all of the disputed soft inquiries remained.

51. The second dispute results sent to Plaintiff on or about June 24, 2026, stated that his dispute results were not currently available. However, the credit report provided to Plaintiff with the dispute results showed that the disputed address of Unit 8400 Box 56 DPO AE 94980056 was back on his credit report and listed as "under dispute". Again, the disputed soft inquiries remained.

52. Defendant repeatedly failed to make a reasonable reinvestigation into Plaintiff's disputes.

53. To date, Defendant continues to report false, inaccurate, and fraudulent information on Plaintiff's credit report. Defendant also continues to allow unauthorized third parties access to Plaintiff's credit report.

54. Upon receipt of the ACDV responses from the furnishers of the fraudulent account information, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

55. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers'

information.  The CRA must make some independent investigation of its own.  "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

56.     If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

57.     Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages.  *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

58.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 57 hereinbefore as if fully set forth herein.

59.     Defendant maintains and distributes credit data files on the Plaintiff's credit.

11

Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

60.     Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

61.     As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, a delay in purchasing a home which cost Plaintiff money for a higher purchase price and higher interest rate, worry, inability to focus, loss of sleep, time spent repeatedly reaching out to Defendant to dispute the inaccurate information continuing to report on his credit reports, invasion of privacy by allowing individuals and entitles unauthorized access to Plaintiff's credit reports, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

62.     Plaintiff is entitled to actual damages in an amount to be determined by the jury.

63.     In addition, the Plaintiff has incurred litigation expenses and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

64.     Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

65.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 64 hereinbefore as if fully set forth herein.

66.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

67.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

68.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

69.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, a delay in purchasing a home which cost Plaintiff money for a higher purchase price and higher interest rate, worry, inability to focus, loss of sleep, time spent repeatedly reaching out to Defendant to dispute the inaccurate information continuing to report on his credit reports, invasion of privacy by allowing individuals and entitles unauthorized access to Plaintiff's credit reports, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, embarrassment

13

and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

70.    In addition, the Plaintiff has incurred litigation expenses, and attorney's' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

71.    Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

72.    Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

**AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.    For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

14

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**


*/s/ Penny Hays Cauley*
Of Counsel


**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Experian Information Solutions, Inc.
c/o C T Corporation System
2 Office Park Court, Suite 103
Columbia, South Carolina 29223